UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BILLY ANDREW BURKHART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01798-JMS-TAB |
| ) | |
| HALL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DISMISSING ACTION WITHOUT PREJUDICE, AND DIRECTING ENTRY OF FINAL JUDGMENT**

This action is based on Billy Burkhart's allegations that he was confined under oppressive, inhumane conditions at the Correctional Industrial Facility in April 2021. The defendants have asserted the affirmative defense that Mr. Burkhart failed to exhaust administrative remedies before filing suit, and both sides have moved for summary judgment on that issue. For the reasons discussed below, the defendants' motion is granted, Mr. Burkhart's motion is denied, and this action is dismissed.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible

in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before it. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. Prison Litigation Reform Act

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Burkhart] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

### III. Facts

The Indiana Department of Correction's (IDOC) Offender Grievance Process (OGP) is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 24-2 at § II. Inmates can use the OGP to resolve concerns about "[a]ctions of individual staff" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A). There is no dispute that the conditions of confinement that are the subject of Mr. Burkhart's lawsuit were issues that he could raise under the OGP.

To exhaust the OGP, an inmate must complete four steps: (1) an initial attempt to resolve the problem informally with an appropriate staff member; (2) a formal, written grievance; (3) a written appeal to his facility's Warden; and (4) a second appeal to the IDOC's Department Grievance Manager. *Id.* at § IV(A). The parties do not dispute that Mr. Burkhart completed the process through the third step. The parties' motions for summary judgment hinge on whether Mr. Burkhart exhausted the fourth step by properly submitting a second-level appeal.

An inmate completes the third step by writing an appeal on State Form 45473, stating the reasons for the appeal, and submitting it to the Offender Grievance Specialist. *Id.* at § XI. The Warden writes a response directly on the appeal form and returns it to the Specialist, who forwards it to the inmate. *Id.*

If the inmate is unsatisfied with the Warden's response, he must submit a final appeal to the IDOC's Offender Grievance Manager. *Id.* at § XII. The inmate does not complete a separate form for his second-level appeal. Rather, he checks a box at the bottom of the original appeal form, returned by the Warden, stating that he disagrees with the Warden's decision. *Id.* The inmate must submit the appeal form to the Specialist, with the pertinent box checked, within five business days

of the Warden's response. *Id.* The Specialist must scan the updated form and any additional information into an IDOC grievance database and then transmit the documents to the Offender Grievance Manager. *Id.*

Mr. Burkhart received a response from the Warden dated May 24, 2021. Dkt. 29-1 at 3. Mr. Burkhart checked the appropriate box, signed the form, and dated it May 25, 2021. *Id.* However, no IDOC records confirm that Mr. Burkhart submitted his second-level appeal to the Specialist as required by the OGP. *See* dkt. 21-1 at ¶¶ 32, 33.

Mr. Burkhart states in his summary judgment motion that he attempted to file a second-level appeal by placing the form in the mail, addressed directly to the Department Grievance Manager. Dkt. 24. An unidentified person removed the appeal from the mail and gave it to the Specialist, who eventually returned it to Mr. Burkhart with instructions on how to submit it properly. *Id.* Mr. Burkhart attempted to resubmit the second-level appeal to the Specialist, but the Specialist refused to accept it because the five-business-day deadline had passed. *Id.*

Mr. Burkhart has not provided a sworn statement of his efforts to file his second-level appeal. The unsworn statement in his summary judgment does not clarify when the Specialist received Mr. Burkhart's second-level appeal or how long the Specialist held it before returning it to Mr. Burkhart.

## IV. Analysis

The defendants' motion establishes—and Mr. Burkhart does not dispute—that he failed to exhaust the OGP before filing suit. Mr. Burkhart was required to complete four steps in the times and places required by the OGP, *Dale,* 376 F.3d at 655, and he completed only three.

Mr. Burkhart's motion for summary judgment attempts to raise a material factual dispute by contending that the fourth step was not available to him. This argument suffers from two flaws.

First, Mr. Burkhart has not submitted admissible evidence to support the assertions in his motion. The defendants have presented evidence showing that a four-step process was available to Mr. Burkhart, and their assertion that Mr. Burkhart failed to exhaust is therefore "admitted without controversy" unless Mr. Burkhart can rebut it. S.D. Ind. L.R. 56-1(f)(1). Mr. Burkhart attempted to rebut the defendants' assertion regarding the fourth step with an unsworn motion and therefore has not "specifically controvert[ed]" their facts "with admissible evidence." *Id.*

Second, even if the Court credited Mr. Burkhart's factual assertions, they would not create a material factual dispute. Mr. Burkhart admits that he did not submit his second-level appeal in the time and place required by the OGP. He asserts that the final step in the process was unavailable to him, but the few facts he has provided do not support that assertion.

"[A]n administrative procedure is unavailable when. . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. Mr. Burkhart's allegations that the mailroom staff and the Specialist returned his appeal to him to submit properly do not suggest that the OGP operated as a dead end at CIF.

"[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* at 643–44. That is not the case here. The OGP states that an inmate who wishes to appeal the Warden's decision "shall check the 'Disagree' box, sign, and submit the completed State Form 45473. . . and any additional, pertinent documentation to the Offender Grievance Specialist." Dkt. 21-2 at § 12. These instructions are clear, and they certainly do not suggest that an inmate should mail his second-level appeal directly to the Department Grievance Manager.

Finally, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process." *Ross*, 578 F.3d at 645. Mr. Burkhart was

6

not thwarted, even by his own account. He attempted to submit his appeal to the wrong person. Perhaps he could show that, after the prison staff recognized his error and fished the appeal out of the mail, they prevented him from timely correcting his error and submitting his appeal to the Specialist by holding the appeal too long. But Mr. Burkhart does not state when he placed his second-level appeal in the mail, when he believes it was removed from the mail, when he believes it was transmitted to the Specialist, or when the Specialist returned it to him. Without these facts, no reasonable trier of fact could conclude that the prison staff actively prevented Mr. Burkhart from attempting to submit his second-level appeal.

The undisputed facts show that all four steps in the OGP were available to Mr. Burkhart and that he failed to exhaust them.

## V. Conclusion

Mr. Burkhart's motion for summary judgment, dkt. [24], is **denied**, and the defendants' motion for summary judgment, dkt. [21], is **granted**. This action is **dismissed without prejudice**. *See Ford*, 362 F.3d at 401 ("[I]f the prisoner does exhaust, but files suit early, then dismissal of the premature action may be followed by a new suit that unquestionably post-dates the administrative decision. . . . [T]herefore . . . *all* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original). The **clerk is directed** to enter final judgment consistent with this entry and the order dismissing claims against Officer Conwell, dkt. 17.

**IT IS SO ORDERED.**

Date: 5/13/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BILLY ANDREW BURKHART
189375
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL
bcwade1486@gmail.com